HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EAST WEST BANK,

   Plaintiff,

 v.

DAVID S. BINGHAM, et al.,

   Defendants.

CASE NO. C13-1394 RAJ

ORDER

  This matter comes before the court on a motion and renewed motion to compel arbitration, dismiss for failure to state a cause of action or to stay the proceedings by defendants David Bingham, Sharon Bingham, Bingo Investments, LLC, Park Place Motors, Ltd., and Francis P. Graham (collectively, "Non-Trust Defendants"). Dkt. ## 16, 27. Defendants Henry Dean, trustee of the Sharon Graham Bingham 2007 Trust (the "SGB Trust"), and the SGB Trust (collectively, the "Trust Defendants") joined in the Non-Trust Defendants' motions.[1] Dkt. # 28.

---

[1] This matter may be decided on the papers submitted. Accordingly, defendants' request for oral argument is DENIED.

ORDER- 1

Plaintiff East West Bank ("EWB") concedes that its claims against the Non-Trust Defendants are subject to arbitration.[2]  Dkt. # 29 at 1-2.  Accordingly, the court GRANTS the Non-Trust Defendants' motions to compel arbitration and dismisses this action as to them.  *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985) ("the Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums.").

The Trust Defendants argue that the court should order arbitration of the claims against them pursuant to *T-Mobile USA, Inc. v. Montijo*, Case No. C12-1317RSM, 2012 WL 6194204 (W.D. Wash. Dec. 11, 2012), or, alternatively, that the court should stay this case until the arbitration concludes.[3]  Dkt. # 28.  The court in *T-Mobile* applied equitable estoppel to a nonsignatory defendant who sought to compel arbitration of a signatory plaintiff's claim pursuant to *Comer v. Micor, Inc.*, 436 F.3d 1098 (9th Cir. 2006) and *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042 (9th Cir. 2009), among other cases.

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002).  "The United States Supreme Court has held that a litigant who is not a party to an arbitration agreement may invoke arbitration under the [Federal Arbitration Act ("FAA")] if the relevant state contract law allows the litigant to enforce the agreement."  *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)).[4]  The parties

---

[2] EWB alleges breach of contract and avoidance of fraudulent transfer against the Non-Trust Defendants.

[3] Since equitable estoppel and stay of the proceedings are the only grounds raised by the Trust Defendants, the court has limited its analysis to these issues.  Dkt. # 28.

[4] The *T-Mobile* court did not address Washington State law.

have not cited, and the court has not found, any Washington case addressing whether a nonsignatory defendant may compel arbitration against a signatory plaintiff.[5] Nevertheless, the Washington Supreme Court has cited *Mundi* favorably with respect to its analysis of equitable estoppel in the arbitration context. *Townsend v. Quadrant Corp.*, 173 Wash. 2d 451, 461, 268 P.3d 917 (Wash. 2012). Accordingly, the court believes that Washington courts would apply the same standard recited in *Mundi*.[6]

Equitable estoppel is a limited exception to the general rule that parties cannot be required to submit to a contract to which they have not agreed: "Equitable estoppel 'precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.'" *Mundi*, 555 F.3d at 1045; *see also Townsend*, 173 Wash. 2d at 461 (citing *Mundi*, 555 F.3d at 1045). The *Mundi* court recognized two types of equitable estoppel in the arbitration context. *Id.* at 1046. In the first, a nonsignatory may be held to an arbitration clause where the nonsignatory knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement.[7] *Id.* In the second, a signatory may be required to arbitrate a claim brought by a nonsignatory where the subject matter of the dispute is intertwined with the contract providing for arbitration, and the nonsignatory and signatory parties have a close relationship.[8] *Id.*

---

[5] The parties apply the same standard for equitable estoppel as the Ninth Circuit, which analyzed and applied the Second Circuit standard for equitable estoppel. *See Mundi*, 555 F.3d at 1046 (citing *Sokol Holdings, Inc. v. BMB Munai, Inc.* 542 F.3d 354 (2d Cir. 2008)). The court notes that *Mundi* "applied the same substantive law on equitable estoppel that a California court would have applied." *Kramer*, 705 F.3d at 1130 n.5.

[6] To the extent Washington courts would only apply equitable estoppel to the factual scenario presented in *Townsend*, the court's ultimate conclusion here would not change: Equitable estoppel is inappropriate under the circumstances present here.

[7] This first situation has been addressed and adopted by Washington courts as a basis for equitable estoppel. *Townsend*, 173 Wash. 2d at 461.

[8] The parties do not dispute that the Non-Trust Defendants are not signatories to the arbitration clauses in the agreements, and that plaintiff EWB is a signatory. Accordingly, this case does not fit within either scenario.

Recently, the Ninth Circuit noted that it has "never previously allowed a nonsignatory defendant to invoke equitable estoppel against a signatory plaintiff," in refusing to expand the doctrine under circumstances presented in that case. *Rajagopalan v. Noteworld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013); *see also Mundi*, 555 F.3d at 1046 (noting that there was no basis for extending the concept of equitable estoppel beyond the very narrow confines delineated in *Dupont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates*, 269 F.3d 187 (3d Cir. 2001) and *Comer v. Micor, Inc.*, 436 F.3d 1098 (9th Cir. 2006)). However, the *Rajagopalan* court also noted that where "other circuits have granted motions to compel arbitration on behalf of non-signatory defendants against signatory plaintiffs, it was 'essential in all of these cases that the subject matter of the dispute was intertwined with the contract providing for arbitration.'"[9] 718 F.3d at 847.

The subject matter of the promissory notes and guaranties is the Non-Trust Defendants' respective obligations to pay EWB the debts incurred. The subject matter of EWB's claim against the Trust Defendants is avoidance of fraudulent transfer of assets. EWB's avoidance of fraudulent transfer claim alleges that the Non-Trust Defendants improperly transferred substantial assets to the SGB Trust with the intent to defraud the creditors of the Non-Trust Defendants. Dkt. # 20 (Am. Compl.) ¶¶ 44-46. Although EWB also asserts this avoidance of fraudulent transfer claim against the Non-Trust Defendants, EWB's claim against the Trust Defendants is an independent claim that is not directly related or intertwined with the subject matter of the notes and guaranties. *See* RCW 19.40.071 (creditor may obtain avoidance of transfer, among other remedies);

---

[9] Since the *Rajagopalan* did not announce a per se rule against expanding equitable estoppel beyond the two situations contemplated by *Mundi*, and analyzed other Circuit courts that had expanded the exception to cover the factual scenario here, the court has analyzed whether equitable estoppel should apply under the factual scenario presented here.

ORDER- 4

1 | *Mundi*, 555 F.3d at 1047 (resolution of claim did not require examination of any
2 | provision of the agreement containing arbitration provision).

3 |       Accordingly, EWB's fraudulent transfer claim is not intertwined with the contracts
4 | providing for arbitration.[10]

5 |       The court also finds that the "close relationship" requirement is not met. This
6 | conclusion is supported by the Second Circuit case cited by *Mundi* where non-signatory
7 | defendants sought to compel a signatory plaintiff to arbitrate based on estoppel grounds.
8 | *Mundi*, 555 F.3d at 1046 (citing *Sokol Holdings*, 542 F.3d at 359-62). In *Sokol Holdings*,
9 | the Second Circuit described circumstances in which the court had found the requisite
10 | close relationship of a nature that justified a conclusion that the party which agreed to
11 | arbitrate with another entity should be estopped from denying an obligation to arbitrate a
12 | similar dispute with the adversary which is not a party to the arbitration agreement. 542
13 | F.3d at 359-61. These circumstances included parent/subsidiary corporate relationships,
14 | closely affiliated companies, assignments of interest in the contract containing the
15 | arbitration agreement, and a suretyship contract that guaranteed performance of a
16 | construction contract containing the arbitration clause, which was incorporated by
17 | reference into the suretyship contract. *Id.* The court reasoned that these cases were
18 | consistent with the black letter rule that the obligation to arbitrate depends on consent,
19 | and that they simply extended the contours somewhat by establishing that consent need

---

[10] The court also notes that the EWB does not appear to make any allegations of improper misconduct or collusion as to the Trust Defendants. Dkt. # 20 ¶¶ 44-47; *see Mundi*, 555 F.3d at 1047 (citing *Brantley v. Republic Mortgage Ins. Co.*, 424 F.3d 392, 396 (4th Cir. 2005) in noting that there were no allegations of collusion or misconduct by the signatory to the arbitration agreement); *Brantley*, 424 F.3d at 396 (citing Eleventh Circuit for proposition that equitable estoppel is appropriate when the signatory raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract, and concluding that plaintiffs' claim did not raise allegations of collusion or misconduct by signatory). Here, while EWB alleges misconduct on the part of the Non-Trust Defendants, there are no allegations of concerted misconduct between the Trust Defendants and the Non-Trust Defendants.

not always be expressed in a formal contract with a party demanding arbitration. *Id.* at 361-62.[11]

Here, the Trust Defendants do not have the same type of close relationship to the Non-Trust Defendants that would indicate that EWB either consented to extend its agreement to arbitrate to the Trust Defendants or would make it inequitable for EWB to refuse to arbitrate.

Accordingly, the court finds that equitable estoppel is inappropriate under the factual circumstances presented in this case.

Finally, the Trust Defendants argue that if the claim against them is not dismissed, it should be stayed pending the outcome of arbitration, citing to Section 3 of the FAA. Dkt. # 28 at 5-6.

Section 3 of the FAA "requires courts to stay litigation of arbitral claims pending arbitration of those claims in accordance with the terms of the agreement." *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1748 (2011); 9 U.S.C. § 3. However, the Trust Defendants have not argued that they are a party to the note and guaranties or that EWB's claim is arbitral under the FAA pursuant to an arbitration agreement. Dkt. # 28. Rather, the Trust Defendants only argued that equitable estoppel should be applied, which the court has rejected. Additionally, the court notes that at least two courts in this District have relied on the reasoning of the Fifth Circuit's rule that if a suit against a

---

[11] The court notes that the only Washington case the court could find that indicated a corporate parent/subsidiary relationship may be required to allow nonsignatory defendants to an arbitration agreement executed by their subsidiary to enforce the arbitration clause, relies on the *Townsend* Court of Appeals decision. *See Woodall v. Avalon Care Center-Federal Way, LLC*, 155 Wash. App. 919, 929, 231 P.3d 1252 (Wash. App. 2010) (citing *Townsend v. Quadrant Corp.*, 153 Wash. App. 870, 224 P.3d 818 (Wash. App. 2009) ("*Townsend* Appellate Court")). However, the Washington Supreme Court affirmed the *Townsend* Appellate Court on other grounds. *See Townsend*, 173 Wash. 2d at 461 (nonsignatory plaintiffs presented identical claims as signatory plaintiffs, two of which related directly to the agreement containing the arbitration agreement, so they received the benefit of the bargain and they could not then seek to avoid the burden of arbitration imposed in that agreement).

nonsignatory is based upon the same operative facts and is inherently inseparable from claims against a signatory, the trial court has discretion to grant a stay if the suit would undermine the arbitration proceedings and thwart the federal policy in favor of arbitration. *See T-Mobile*, Case No. C12-1317RSM, 2012 WL 6194204 at *6; *Ballard v. Corinthian Colleges, Inc.*, Case No. C06-5256FDB, 2006 WL 2380668, *2 (W.D. Wash. Aug. 16, 2006). The Fifth Circuit case relied on in those cases analyzed the applicability of Section 3 of the FAA to nonsignatories. *Hill v. GE Power Sys., Inc.*, 282 F.3d 343, 347 (5th Cir. 2002). Here, again, the Trust Defendants have not demonstrated that the FAA applies to them where they are not parties to an agreement containing an arbitration clause. *See Countrywide Home Loans, Inc. v. Mortgage Guar. Ins. Corp.*, 642 F.3d 849, 854 (9th Cir. 2011) ("'By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'") (emphasis in original) (quoting *Dean Witter*, 470 U.S. at 218). Nor is the court aware of any Ninth Circuit or Supreme Court authority that applies Section 3 of the FAA to nonsignatories.[12] Accordingly, Section 3's mandatory stay is inapplicable, and the court addresses whether a discretionary stay is nevertheless appropriate pursuant to Supreme Court and Ninth Circuit authority.

In some cases, "it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration. That decision is one left to the district court . . . as a matter of its discretion to control its docket." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 20 n.23 (1983); *see Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936) ("the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket

---

[12] Even if the court considered the Fifth Circuit rule, the court finds the facts of this case are distinguishable where plaintiff's claim for avoidance of fraudulent transfer is not based on any party's rights under the contracts containing the arbitration clause.

ORDER- 7

with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance."). The party seeking "a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one [sic] else." *Landis*, 299 U.S. at 255; *see also CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (stating that in determining whether to impose a stay, the court must weigh competing interests of possible damage that may result from the granting of a stay, the hardship or inequity a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof and questions of law that could be expected to result from a stay). "A stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." *Levya v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979).

Here, the Trust Defendants have not indicated whether the stay would be indefinite, would result in undue delay, would likely be of fairly short duration, or would be concluded within a reasonable time. Dkt. # 28 at 5-6; *see Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066-67 (9th Cir. 2007). Additionally, the Trust Defendants have not identified any hardship or inequity that they would suffer absent a stay. Dkt. # 28 at 5-6. In contrast, EWB will be harmed if the court imposes a stay because a stay will prevent its ability to identify the alleged fraudulent transfers received by the Trust Defendants and to take action to protect those assets from being wasted or from further disbursement until after the arbitration. The court recognizes that EWB's avoidance of fraudulent transfer claim against the Non-Trust Defendants relies on the same factual and legal theories as EWB's avoidance of fraudulent transfer claim against the Trust Defendants. Dkt. # 20 (Am. Compl.) ¶¶ 44-47; RCW 19.40 *et seq.* Thus, simultaneous prosecution of the avoidance of fraudulent transfer claim in

arbitration and here would be a waste of judicial resources, would likely lead to a duplication of effort and risk inconsistent decisions. Nevertheless, absent any indication of duration of the stay or any hardship or inequity the Trust Defendants would suffer, combined with the potential harm to EWB, the court finds that a stay is not appropriate.[13]

For all the foregoing reasons, the court GRANTS in part and DENIES in part defendants' motions. Dkt. ## 16, 27, 28. The Non-Trust Defendants are DISMISSED.

Dated this 14th day of January, 2014.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

---

[13] The court is, of course, concerned about the incredible waste of resources in simultaneously litigating the same claim against different defendants in different forums. Unfortunately, the Supreme Court appears to have contemplated this result. *See Dean Witter*, 470 U.S. at 217, 221 (The FAA "requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, *even where the result would be the possibly inefficient maintenance of separate proceedings in different forums*."; "The preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate, *even if the result is 'piecemeal' litigation . . . .*") (emphasis added). Since the Trust Defendants have not met their burden in requesting a stay, the court's hands are tied.